IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ABRAHAM GRAHAM                    §                         PLAINTIFF
                                  §
v.                                §         CIVIL NO.: 1:13cv43-HSO-RHW
                                  §
VT HALTER MARINE, INC.            §                        DEFENDANT

MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant VT Halter Marine, Inc.'s Motion for

Summary Judgment [39].  Plaintiff Abraham Graham has filed a Response [43], and

Defendant VT Halter Marine, Inc. has filed a Rebuttal [45].  Having considered the

parties' submissions, the record, and relevant legal authorities, the Court is of the

opinion that Defendant VT Halter Marine, Inc. is entitled to judgment as a matter

of law as to each claim asserted by Plaintiff.

I. BACKGROUND

A.    Factual Background

In October 2010, Plaintiff Abraham Graham ("Plaintiff"), who is African-

American, began working as a welder in a weld shop at Defendant VT Halter

Marine, Inc.'s ("Defendant") Pascagoula, Mississippi, shipyard.  Dep. of Pl.

Abraham Graham ("Pl.'s Dep.") 58:20-24 [39-1].  Plaintiff's immediate supervisor

was David Rawls.  *Id*. at 91:14-25 [39-1].  Plaintiff was normally assigned to work in

the weld shop but on occasion would be directed to work inside of vessels.  *Id*. at

91:14-20 [39-1].  The majority of Plaintiff's complaints in this case are directed

toward Rawls.  *Id*. at 94:16-19, 102:6-9 [39-1].  Plaintiff recalls that Rawls

1

constantly observed and remarked upon the work Plaintiff was doing, complained about the length of time the welders remained on break, followed Plaintiff to the restroom, refused to grant black workers excused absences, and had a habit of "running off" black workers.  *Id*. at 94:22-96:12 [43-2].  According to Plaintiff, Rawls' supervisor, Wayne Stokes, would often simply agree with what Rawls said or did. *Id*. at 113:14-22 [39-1].  Plaintiff acknowledges, however, that Rawls' treatment did not prevent Plaintiff from performing and excelling as a welder.  *Id*. at 92:22-93:23 [39-1].

On the night of September 15, 2011, while Plaintiff and several other welders were beginning their night shift on a barge in which they had been assigned work, another welder discovered a noose.  *Id*. at 109:15-110:4 [39-1].  On the morning of September 16, 2011, Lisa Fallon, Defendant's Director of Human Resources, began an internal investigation by obtaining statements from the welder who discovered the noose and from the supervisors of the day shift which ended immediately prior to the discovery of the noose.  Decl. of Lisa Fallon ("Fallon Decl.") ¶¶ 4-5 [39-3].  On September 19, 2011, however, two more nooses were found in the barge's "hole." Pl.'s Dep. 110:5-10 [39-1].   At this point, Plaintiff and the members of the weld shop who were assigned to the barge walked off the job.  *Id*. at 111:22-25.

On September 20, 2011, Defendant ordered twenty-four hour security to be posted at the barge, and Defendant's chief executive officer, Bill Skinner, held a meeting with the members of Plaintiff's work crew to discuss the incidents and Defendant's response.  Fallon Decl. ¶7 [39-3].  That same day, Defendant

distributed a written memorandum to all shipyard workers condemning the noose incidents as violations of Defendant's harassment policy and informing them that an investigation was underway to identify and terminate those responsible.  Fallon Decl. ¶7, Ex. 6 [39-3].  Defendant paid the entire work crew for an eight hour shift for the night of September 19, 2011.  Pl.'s Dep. 113:18-114:1 [39-1].  On September 23, 2011, Mr. Skinner met with a third-party professional investigation service to have another, parallel investigation conducted into the incidents.  Fallon Decl. ¶10 [39-3].  Although the individual(s) who were responsible for the nooses were never identified, no similar incidents have occurred since September 19, 2011.  *Id.* at ¶13 [39-3], Pl.'s Dep. 126:16-19 [39-1], 128:22-129:5 [42-3].

On February 7, 2012, over four and one-half months later, Plaintiff had a cellular telephone with him while at work and answered a call in front of Rawls. Pl.'s Dep.  132:12-18 [39-1].  Plaintiff claims that he needed his telephone and had to take the call because his wife is legally blind and had been sick.  *Id.* at 132:2-11 [39-1].  Plaintiff was aware that Defendant's policies clearly prohibited him from having or using a cellular telephone while at work.  *Id.* at 82:2-5, 84:2-20, 85:1-4 [39-1].   Plaintiff understood this policy.  *Id.*  Defendant suspended Plaintiff for three days as a result of this violation of policy.  *Id.* at 131:18-132:1 [39-1].

Defendant also had a policy of requiring employees such as Plaintiff to call in when they knew they would not be able to come to work on a particular day.  Pl.'s Dep. 79:4-19 [39-1].  On Friday, February 10, 2012, the day he was due to return from suspension, Plaintiff called Defendant's human resources department

pursuant to the call-in policy and spoke with Delores Perry, a file clerk in the department.  Pl.'s Dep. 139:21-140:25 [39-1], Dep. of Delores Perry ("Perry Dep.") 5:19-23 [39-18].  Plaintiff informed Perry that he needed to stay at home to care for his wife and would not be present for work that day.  Pl.'s Dep. 139:21-25 [39-1], Perry Dep. 7:4-11, 9:7-15 [39-18].  Plaintiff, however, did not return to work the following Monday, Tuesday, or Wednesday, and he acknowledged that he did not use the call-in procedure on any one of those days to notify Defendant because Plaintiff had heard an unsubstantiated rumor that he had been terminated.[1]  Pl.'s Dep. 142:5-143:23 [39-1].

According to Iris Favre, Defendant's policy, which is explained to individuals who will be working at the shipyard, is that "a three-day no call is considered a resignation."  Dep. of Iris Favre ("Favre Dep.") 69:9-11 [39-19]; *see also* VT Halter Marine, Inc. Orientation Checklist 2 [39-5] ("Attendance Notification: . . . Three (3) consecutive days of unreported absences will be considered a voluntary resignation.").  Plaintiff was aware of and understood this policy.  Pl.'s Dep. 68:25-69:4 [39-1].  Taking Plaintiff's failure to communicate for three consecutive days that he would not be at work as an abandonment of his job, Defendant terminated Plaintiff's employment on February 16, 2012.  Favre Decl. ¶8 [39-5].  On April 23, 2012, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") asserting Defendant had wrongfully discriminated against him on the

---

[1] Plaintiff claims that Roosevelt Murray was the welder who informed him of the rumor that Plaintiff had been terminated.  Pl.'s Dep. 142:14-20 [39-1].  Mr. Murray admits he did "not have any firsthand knowledge about [Plaintiff's] termination[,] . . . [and he] had no way of knowing the circumstances surrounding [Plaintiff's] termination."  Murray Decl. ¶7 [39-10].  Plaintiff never attempted to contact Defendant to confirm the rumor.  Pl.'s Dep. 143:12-23 [39-1].

basis of his race.  Fallon Decl. ¶17, Ex. 20 [39-4].  The EEOC issued a right-to-sue letter on July 30, 2012.  *Id*. at Ex. 20 [39-4].

B.    Procedural History

On October 29, 2012, Plaintiff filed the Complaint in this case advancing claims for race-based disparate treatment, hostile work environment, and retaliation pursuant to Title VII, 42 U.S.C. §§2000e-1 to -2000e-17, along with state law claims for emotional distress.[2]  Defendant now moves for summary judgment on the basis that Plaintiff has failed to establish a prima facie case with respect to any of his Title VII claims.  Br. in Supp. of Mot. for Summ. J. 15-16, 18-22 [40].  Defendant further maintains that the evidence is insufficient to support a hostile work environment claim, and that it had legitimate nondiscriminatory reasons for suspending and terminating Plaintiff.  *Id*. at 16-17, 22-24 [40].  In Response [43], Plaintiff contends he was forced to work in a hostile work environment due to the noose incidents, the alleged scrutiny he received after the walk out, and harassment he allegedly experienced at the shipyard's security gate.  Mem. in Opp'n to Def.'s Mot. for Summ. J. 4-9 [43].  Plaintiff argues that he has established a prima facie case of discrimination based on race and retaliation stemming from the walk out and resulting investigation, and that jury questions exist related to the explanation Defendant has provided for its actions.  *Id*. at 13-18, 22-24 [43].

---

[2] Plaintiff has expressly confessed judgment as to his emotional distress claims, and the Court will not address those claims.  *See* Mem. in Opp'n to Def.'s Mot. for Summ. J. 24 [43].

## II. DISCUSSION

A.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In considering a motion for summary judgment, the Court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law[, and an] issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at

248).  "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment."  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  "The court has no duty to search the record for material fact issues."  *RSR Corp.*, 612 F.3d at 858. "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id*.

B.   Analysis

1.   Plaintiff's Hostile Work Environment Claim

a.   The "Continuing Violation" Doctrine Does Not Apply in this Case

Hostile work environment claims "are based on the cumulative effect of individual acts."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Although Plaintiff's April 23, 2012, EEOC charge was made over 200 days since the noose incidents on September 15 and 19, 2011,  the "continuing violation" doctrine allows employees to predicate a hostile work environment claim on "behavior alleged outside the 180–day window" for timely filing an EEOC charge.  *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009).  The "continuing violation" doctrine is limited in one pertinent way: "the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window."  *Id*. (citing *Morgan*, 536 U.S. at 118, 120).

*Stewart* involved a hostile work environment claim based on the plaintiff's allegation that she was sexually harassed from 2003 to 2006 by a supervisor, Jerry Loftin. *Id*. The plaintiff claimed that Loftin began harassing her in September 2003, when she worked as a member of a field crew he supervised. *Id*. at 325. The harassment lasted until the plaintiff's employer transferred her on October 11, 2004. *Id*. at 326. In July 2005, the plaintiff was reassigned to work on a field crew, but when her supervisor retired in December 2005, Loftin was reassigned as her supervisor. *Id*. The plaintiff conceded that she was not subject to any harassment by Loftin "from the time she was removed from his supervision in October 2004 until February 2006[,]" when Loftin renewed his harassing behavior. *Id*. On April 26, 2006, Plaintiff filed a charge with the EEOC alleging discrimination by Loftin, and after receiving a right to sue letter, the plaintiff added her employer to a civil lawsuit she had previously filed against Loftin. *Id*. at 326-27. Plaintiff's employer later obtained summary judgment on the basis that there was no continuing violation due to its intervening act of reassigning the plaintiff away from Loftin. *Id*. at 327.

In affirming summary judgment, the Fifth Circuit Court of Appeals reasoned that the pre- and post-limitations period conduct "involved the same type of harassment and were perpetrated by the same manager" and thus the conduct occurring between 2003-2004 and the 2006 conduct would constitute a single practice absent sufficient intervention by the employer. *Id*. at 329. The Fifth Circuit concluded, however, that the employer's intervening action severed the two

8

periods of alleged harassment. *Id*. The employer's actions were considered prompt and calculated to end the alleged harassment. *Id*. That the alleged harassment did not occur again throughout the sixteen month period that the plaintiff was reassigned also indicated the employer's actions severed the two periods of harassment. *Id*. In addition, the fact that the plaintiff declined to have the employer take further corrective action during the period that she was reassigned supported the conclusion that the employer sufficiently intervened. *Id*.

The same conclusion obtains here with respect to Defendant's response to the two September 2011 incidents involving nooses being found in the area in which Plaintiff and his fellow crew were assigned to work. On September 16, 2011, one day after the first noose was discovered, Defendant's human resources department began coordinating an internal investigation and obtaining statements from the welder who discovered the noose and the supervisors of the day shift which ended immediately prior to the discovery of the noose. Fallon Decl. ¶¶ 4-5 [39-3].

On September 20, 2011, within five days of the first noose being found and one day after the second and third nooses were discovered, Defendant distributed a written memorandum to all shipyard workers condemning the incidents as violations of Defendant's harassment policy and informing them that an investigation was underway to identify and terminate those responsible for the nooses. *Id*. at ¶7, Ex. 6 [39-3]. That same day, Defendant posted twenty-four hour security at the barge, and Defendant's chief executive officer, Bill Skinner, led a meeting with the members of Plaintiff's work crew to discuss the incidents and

Defendant's response.  *Id.* at ¶7 [39-3].  There is no evidence that at this meeting either Plaintiff or any other member of the crew assigned to the area where the nooses were found requested any further action be taken or complained that the action was inadequate.  *Id.* at ¶9 [39-3], Pl.'s Dep. 120:13-18 [39-1].  On September 23, 2011, Mr. Skinner met with a third-party professional investigation service to have an investigation conducted into the incidents to determine who was responsible.  Fallon Decl. ¶10 [39-3].  It is undisputed that no similar incidents have occurred since September 19, 2011.  *Id.* at ¶13 [39-3], Pl.'s Dep. 126:16-19 [39-1], 128:22-129:5 [42-3].

This evidence indicates that Defendant's actions were prompt and calculated to not only identify those responsible but also to prevent similar future incidents.  *See, e.g., Carmon v. Lubrizol Corp.*, 17 F.3d 791, 793-94 (5th Cir. 1994) (concluding hostile work environment claim failed because employer took prompt remedial action by interviewing the plaintiff the same day she first complained of harassment, issuing a memo to all employees condemning the conduct in question, and conducting an investigation which included interviewing witnesses).  Beginning the morning of September 16, 2011, Defendant's investigation was prompt, and when the second and third nooses were discovered, Defendant took additional action.  The Court is of the opinion that Defendant's intervening actions severed the noose incidents from the subsequent conduct of which Plaintiff complains such that he may not use the continuing violation doctrine to rely upon the noose incidents to support his hostile work environment claim.

      b.    <u>There is Insufficient Evidence to Support Plaintiff's Hostile Work</u>
<u>Environment Claim</u>

"A prima facie case of racial harassment alleging hostile work environment normally consists of five elements: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term condition or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001).  A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Courts must look to the "totality of circumstances" to determine whether a work environment is hostile and "focus[] on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 523-24 (5th Cir. 2001) (quoting *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996)).  Harassment will be seen as "affect[ing] a term, condition, or privilege of employment," when it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Harris*, 510 U.S. at 21).

Plaintiff's hostile work environment claim cannot withstand summary judgment because there is insufficient evidence that the alleged harassment affected a term or condition of Plaintiff's employment.  To support his hostile work environment claim, Plaintiff points out that Rawls constantly observed and marked upon the work Plaintiff was doing, complained about the length of time the welders remained on break, followed Plaintiff to the restroom, refused to grant black workers excused absences, and had a habit of "running off" black workers.  Pl.'s Dep. 94:22-96:12 [43-2].  Plaintiff also complains that the contract security guards responsible for conducting random searches of workers entering Defendant's facility would mostly stop black workers, making them late for their shifts.  Mem. in Opp'n to Def.'s Mot. for Summ. J. 7 [43].  There is no evidence, however, that even if true this conduct was so severe as to draw complaints from other welders who worked on Plaintiff's crew or caused Plaintiff to report the conduct to Defendant at any point in time.  Pl.'s Dep. 61:23-62:17 [39-1].  There is an equal absence of evidence that Rawls' conduct rose to the level of physical threats or humiliation, and Plaintiff admits the allegedly hostile work environment did not interfere with Plaintiff's work performance.  *Id*. at 92:22-93:3 [39-1].  Under these facts, the Court is of the view Plaintiff cannot demonstrate that the harassment of which he complains affected a term or condition of his employment.  *See, e.g.*, *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326 (5th Cir. 2004) ("[T]he harassment must be so severe and pervasive that it destroys a [plaintiff's] opportunity to succeed in the

12

work place.") (citation omitted).  Plaintiff thus cannot establish a prima facie case of hostile work environment.

Even if Plaintiff could show a prima facie case, Plaintiff cannot prove that Defendant was aware or should have been aware of the alleged harassment.[3] Plaintiff admittedly did not complain or provide notice of any kind to Defendant of the harassment he claims was taking place.  Pl.'s Dep. 61:23-62:17, 127:3-6 [39-1]. Plaintiff's lack of notice of any alleged harassment prevented Defendant from taking remedial action.  Under similar circumstances, the Fifth Circuit has upheld summary judgment in an employer's favor because the employee could not prove that the employer failed to take prompt remedial action where the employee unreasonably failed to take advantage of corrective opportunities provided by the employer.  *Hockman*, 407 F.3d at 330.  Plaintiff has not produced sufficient evidence that Defendant knew or should have known of the alleged harassment but failed to take any action.  Defendant is entitled to summary judgment as to Plaintiff's hostile work environment claim.

2.   Plaintiff's Retaliation Claim

The antiretaliation provision of Title VII prohibits employers from discriminating against employees or job applicants on the basis that the individual opposed a practice made unlawful by Title VII or made a charge, testified, assisted, or participated in an investigation or proceeding under Title VII.  *Burlington N. and*

---

[3] The parties appear to agree that, to establish a prima facie case under the circumstances presented, Plaintiff must produce sufficient evidence that Defendant knew or should have known of the harassment and failed to take prompt remedial action.  *Compare* Def.'s Br. in Supp. of Mot. for Summ. J. 15 [40] *with* Pl.'s Mem. in Opp'n to Mot. for Summ. J. 20 [43].

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (citing 42 U.S.C. § 2000e-3(a)).  "To establish a prima facie case for retaliation, an employee must show 1) that she engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action." *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005) (citations and internal marks omitted).  "[C]ases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close' . . . ."  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  A causal connection may be found where temporal proximity is supplemented with other evidence.  *Cf. Cothran v. Potter*, 398 F. App'x 71, 73-74 (5th Cir. 2010) ("The combination of temporal proximity and knowledge of a protected activity may be sufficient to satisfy a plaintiff's prima facie burden for a retaliation claim.").

Defendant contends that the lack of temporal proximity between, on the one hand, the protected activity in which Plaintiff asserts he participated when he and the rest of the welding crew walked off the job after the discovery of the second and third nooses and, on the other, his suspension and termination precludes Plaintiff from establishing the existence of a causal connection.  Plaintiff counters that "the causal link is evident" from the continuous nature of Rawls' conduct.  Mem. in Opp'n to Mot. for Summ. J. 22-23 [43].  Plaintiff does not cite any authority to support finding a causal nexus in similar circumstances.  *Id*.  Instead, Plaintiff

14

urges the Court to apply a "mixed motive" analysis to conclude that even if Defendant has articulated a legitimate, nonretaliatory justification for its actions, a motivating factor is Plaintiff's protected activity. *Id.* at 22-23.

The Court is of the view that the length of time that passed, some four and one-half months between the noose incidents, walk-out, and investigation and Defendant's alleged retaliatory termination of Plaintiff, is insufficient to support the finding of a causal connection. *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002) (concluding that a plaintiff who relied on nothing more "than the five month time period" between his EEOC charge and his termination failed to present evidence of retaliation). Plaintiff's reliance upon Rawls' conduct to supplement the insufficient temporal proximity is unavailing. Mem. in Opp'n to Mot. for Summ. J. 23 [43], Decl. of Pl. Abraham Graham ("Pl.'s Decl.") ¶8 [42-1]. Plaintiff's testimony belies any assertion that Rawls began conducting himself differently after the noose incident, walk out, and investigation. Pl.'s Dep. 130:3-131:12 [42-3]. Rather, according to Plaintiff, from the beginning of his employment Rawls conducted himself the same way the entire time Plaintiff worked under Rawls, including for over one year prior to September 2011. *Id.*, Rawls Dep. 13:19-25 [42-7]. Plaintiff has not presented any evidence to support the retaliation claim beyond the five-month lapse of time between the alleged protected activity and his suspension and subsequent termination. This is insufficient to establish a causal connection. *Raggs*, 278 F.3d at 472.

Even if a sufficient causal connection between the protected activity and Plaintiff's suspension and termination could be established, Defendant has produced legitimate, nondiscriminatory reasons for its decision to suspend and subsequently terminate Plaintiff. "Title VII retaliation claims must be proved according to traditional principles of but-for causation," and not the more lenient "motivating factor" analysis. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013); *see also Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 453 n.4 (5th Cir. 2013). Plaintiff does not dispute that in February 2012, Defendant's policies prohibited Plaintiff from having a cellular telephone with him while he worked, that he was aware of and understood this policy, that he nevertheless had a cellular telephone with him while at work, and that he even answered a call on that telephone while at work. Pl.'s Dep. 82:2-5, 84:2-20, 85:1-4, 132:12-18 [39-1]. Plaintiff understood that he was suspended because of this telephone incident. *Id.* at 131:18-132:1 [39-1]. Plaintiff further does not dispute that Defendant's policy required him to call-in when he would not be able to be present for work on a given day. *Id.* at 79:4-19 [39-1]. At the end of his suspension, Plaintiff used the call-in procedure to inform Defendant that he would not be present on February 10, 2012, the day he was due to return to work. *Id.* at 137:21-25 [39-1], Perry Dep. 7:4-11, 9:7-15 [39-18]. It is undisputed that Plaintiff did not return to work the following Monday, Tuesday, or Wednesday, and Plaintiff acknowledged that he did not use the call-in procedure to inform Defendant that he would be absent any one of those days because Plaintiff had heard an

16

unsubstantiated rumor that he had been terminated.  Pl.'s Dep. 142:5-143:23 [39-1].

Taking Plaintiff's failure to communicate the fact he would not be at work as an

abandonment of his job, Defendant terminated Plaintiff's employment.  Favre Decl.

¶8 [39-5].  These facts preclude a finding that Defendant's proffered nonretaliatory

reasons were a pretext for retaliation.  Plaintiff has not carried his burden in this

regard, and Defendant is entitled to judgment as a matter of law on Plaintiff's

retaliation claim.

 3. <u>Plaintiff's Race-Based Discrimination Claim</u>

Title VII forbids employment discrimination against a person on the basis of

race.  *Burlington*, 548 U.S. at 56 (quoting 42 U.S.C. § 2000e-2(a)).  To establish a

race-based discrimination claim, a plaintiff must first demonstrate the following

prima facie elements: (1) membership in a protected class; (2) qualifications for the

position at issue; (3) an adverse employment decision; and (4) replacement by

someone outside the protected class or, in the case of disparate treatment, being

subjected to less favorable treatment than employees not in the protected class.

*Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir.

2001) (citation omitted).  Once a plaintiff makes a prima facie showing, a

presumption of discrimination arises and the burden then shifts to the employer to

articulate a legitimate, nondiscriminatory justification for its actions.  *Laxton v.*

*Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).  Once the employer does so, the burden

then shifts back to the plaintiff to

> offer sufficient evidence to create a genuine issue of material fact
> either that [the employer's] reason is not true, but is instead a pretext

> for discrimination (pretext alternative); or (2) that [employer's] reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is [the plaintiff's] protected characteristic (mixed-motives alternative).

*Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citation omitted).

Plaintiff is unable to establish a prima facie case of race discrimination because Plaintiff has not shown that he "was subjected to less favorable treatment than employees not in the protected class." *Okoye*, 245 F.3d at 512-13. To make such a showing, Plaintiff must demonstrate "either [1] that he did not violate the [work] rule [at issue,] or [2] that, if he did, white employees who engaged in similar acts were not punished similarly." *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012), as revised (June 22, 2012) (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)). If he relies upon the "similarly situated" approach, Plaintiff "must show that white employees were treated differently under circumstances 'nearly identical' to his." *Mayberry*, 55 F.3d at 1090 (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared [1] held the same job or responsibilities, [2] shared the same supervisor or had their employment status determined by the same person, and [3] have essentially comparable violation histories." *Turner*, 675 F.3d at 893 (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)).

The record reveals two potential comparators, Ronald Vete and Danny Brown. Pl.'s Dep. 94:22-95:6 [42-3], Decl. of David Rawls ("Rawls Decl.") ¶6 [39-12]. While the record indicates that Vete and Brown were both white and worked under

Rawls' supervision, there is insufficient evidence about their job responsibilities as related to Plaintiff's or their violation histories, if any.  Rawls Decl. ¶6 [39-12].  In fact, the record suggests that while both Vete and Brown were welders, the pair performed a different job on what is called the "seamer line," which is also in an area different than where Plaintiff's responsibilities required him to work.  *Id.*  Although Plaintiff complains that he was aware of other unidentified white individuals around the shipyard using cellular telephones at work, there is insufficient evidence to evaluate whether these individuals held the same job responsibilities, shared the same supervisor, or were disciplined during their employment history.[4]  Pl.'s Decl. ¶8 [42-1]; *see also Turner*, 675 F.3d at 893 (citation omitted).

A plaintiff must show he has been treated differently from other similarly situated employees to make out a prima facie case for racial discrimination.  *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005).  The Court is of the view that Plaintiff has not made such a showing and thus has not established a prima facie case of racial discrimination in violation of Title VII.  *See Mayberry*, 55 F.3d at 1090 (finding that plaintiff failed to create a jury question on the issue of whether he was treated differently than identical white employees, in part, because there was no evidence of the white employees' work history); *McField v. Mississippi Dept.*

---

[4] According to Wayne Stokes, Defendant's nightshift foreman at the shipyard, and Phyllis Denomy, the Security Manager at the shipyard, certain workers were authorized to use cellular telephones while at the shipyard.  Dep. of Wayne Stokes ("Stokes Dep.") 51:3-22 [39-17], Dep. of Phyllis Denomy ("Denomy Dep.") 21:13-23 [42-11].   Plaintiff has not demonstrated whether the white workers he claims to have seen using their telephones were among those authorized to use cellular telephones. Pl.'s Dep. 137:3-5 [39-1], Mem. in Opp'n to Mot. for Summ. J. 8 [43].

*of Pub. Safety*, No. 3:12cv236-DPJ-FKB, 2003 WL 2636616, at *3-4 (S.D. Miss. June 12, 2013) (reasoning that discrimination plaintiff failed to show that he and purported comparator, a white member of plaintiff's troop, were similarly situated where "the details provided about [the comparator were] sparse" and there was no evidence that the comparator "had a similar disciplinary history").

Even if Plaintiff could establish a prima facie case of discrimination, Defendant has proffered legitimate, nondiscriminatory reasons for suspending and terminating Plaintiff's employment, and Plaintiff has not met his burden of establishing either that Defendant's reasons were pretextual or that Plaintiff's race was a motivating factor. *Vaughn*, 665 F.3d at 636 (citing 42 U.S.C. § 2000e–2(m)). Plaintiff has not demonstrated that Defendant's reason for suspending Plaintiff for violating the cellular telephone policy and subsequently terminating Plaintiff for violating the attendance policy were pretextual. Plaintiff was aware of these policies, understood the policies, and knew they applied to him. Pl.'s Dep. 79:4-19, 82:2-5, 84:2-20, 85:1-4 [39-1].

With respect to the motivating factor analysis, Plaintiff does not appear to specifically contend that his race was a motivating factor in Defendant's decision to suspend and then terminate him. Were Plaintiff to raise such a contention, however, the Court is of the view that the record evidence does not create a jury question on whether Plaintiff's race was a motivating factor in Defendant's decision to terminate him. It is undisputed that Plaintiff was in violation of the cellular telephone policy at the time he was suspended, and it is equally uncontradicted that

Plaintiff's failure to call despite being absent from work for three consecutive days, violated Defendant's policy and warranted termination.  Plaintiff has not come forward with evidence beyond his own conjecture and subjective belief indicating that similarly situated white welders were permitted to possess and use their cellular telephones while on the job or that they were permitted to remain absent for three consecutive days without calling in contravention of Defendant's policies. Defendant is entitled to judgment as a matter of law as to Plaintiff's Title VII discrimination claim.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has not carried his summary judgment burden with respect to his claims against Defendant. Summary judgment is appropriate.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant VT Halter Marine, Inc.'s Motion for Summary Judgment [39] is **GRANTED**, and Plaintiff Abraham Graham's claims against Defendant are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 21st day of July, 2014.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE